Paul H. Bratton, Esq.
Law Office of Paul H. Bratton
P.O. Box 463
Talkeetna, Alaska 99676
Phone: (907) 733.2185
Fax: (772) 679.8158
phbratton@gci.net
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| KARY BRINSON, an individual, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BANK OF AMERICA, N.A., a limited )<br>partnership; and DOES 1 through 10 )<br>inclusive, )<br>)<br>Defendants. )<br>_____ ) | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br><br><br>**Case No.:** |

## I. INTRODUCTION

1.   Bank of America accepted $45 billion in funds from the United States Government as part of the Troubled Asset Relief Program ("TARP"), 12 U.S.C. § 5211.  By accepting this payment, Bank of America agreed on behalf of itself and its related companies, including its predecessor and subsidiary company, BAC Home Loans Servicing, LP, that it would participate in the Home Affordable Modification Program ("HAMP") – a detailed program designed to stem the foreclosure crisis by providing affordable mortgage loan modifications to eligible borrowers.

2.   In addition to its obligations based on its contract with the Treasury

Department, Bank of America entered into written agreements with individual homeowners, including Plaintiff, for temporary loan modifications that must be converted to permanent loan modifications. Plaintiff complied with the agreement by submitting the documentation asked of her and, when requested, by making payments. Despite Plaintiff's efforts, Defendant has ignored its contractual obligation to modify her loan permanently.

3. Plaintiff KARY BRINSON brings this suit to challenge the failure of Defendant Bank of America to honor the terms of its agreement with her to modify her mortgage to a point that it is affordable and sustainable, and to recover costs and losses incurred as a result.

## II. PARTIES & VENUE

4. Plaintiff KARY BRINSON, a natural person, is a citizen of the State of Alaska.

5. The amount in controversy exceeds $75,000, exclusive of interests and costs.

6. Defendant BANK OF AMERICA, N.A. is a limited partnership operating under the laws of the State of Delaware and having its principal place of business in the State of North Carolina.

7. Jurisdiction of this Court arises under 28 U.S.C. § 1332., and under the doctrine of supplemental jurisdiction as set forth at 28 U.S.C. §1367(a). Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. Venue in this District is proper in that the Defendants transact business here and the conduct complained of occurred here.

8. The true names and capacities, whether individual, corporate (including officers and directors thereof), associate or otherwise of Defendants sued herein as DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff is informed and believes, and alleges that each Defendant designated as a DOE is involved in or is in some manner responsible as a principal, beneficiary, agent, co-conspirator, joint venturer, alter ego, third party beneficiary, or otherwise, for the agreements, transactions, events and/or acts hereinafter described, and thereby proximately caused injuries and damages to Plaintiff. Plaintiff requests that when the true names and capacities of these DOE Defendants are ascertained, they may be inserted in

all subsequent proceedings, and that this action may proceed against them under their true names.

### III. FACTUAL ALLEGATIONS

9.     Plaintiff Kary Brinson is a single Mom and shares her home with her two young children.

10.    Sometime in mid-2009, Plaintiff encountered difficulty in making her monthly mortgage payments with Defendant, her mortgage loan's servicer.

11.    Defendant offered Plaintiff a Trial Period Plan ("TPP") under the Home Affordable Modification Program where a permanent loan modification would be executed upon completion of the trial period.

### *Creation of the Home Affordable Modification Program*

12.    Congress passed the Emergency Economic Stabilization Act of 2008 on October 3, 2008 and amended it with the American Recovery and Reinvestment Act of 2009 on February 17, 2009 (together, the "Act").  12 U.S.C.A. § 5201 *et. seq.* (2009).  The Act grants the Secretary of the Treasury the authority to establish the Troubled Asset Relief Program, or TARP.  12 U.S.C. § 5211.  Under TARP, the Secretary may purchase or make commitments to purchase troubled assets from financial institutions.  *Id.*

13.    On February 18, 2009, pursuant to their authority under the Act, the Treasury Secretary and the Director of the Federal Housing Finance Agency announced the Making Home Affordable program.  The Making Home Affordable program consists of two sub-programs.  The first sub-program relates to the creation of refinancing products for individuals with minimal or negative equity in their home, and is now known as the Home Affordable Refinance Program, or HARP.  The second sub-program relates to the creation and implementation of a uniform loan modification protocol, and is now known as the Home Affordable Modification Program, or HAMP.  It is this subprogram that is at issue in this case.

14.    HAMP is funded by the federal government, primarily with TARP funds.  The

Treasury Department has allocated at least $75 billion to HAMP, of which at least $50 billion is TARP money.

15. Borrowers must meet specific criteria to be eligible to participate in HAMP. Plaintiff at all times met the criteria for eligibility and qualification under HAMP.

16. After applying the HAMP modification steps to calculate the modified payment amount, a servicer must offer the borrower a TPP. The TPP consists of a three-month period in which the homeowner makes mortgage payments based on the modification formula stated in the Program Documentation. Defendant uses a standard form agreement to offer TPPs to eligible homeowners. This agreement describes the homeowner's duties and obligations under the plan and promises a permanent HAMP modification for those homeowners that execute the agreement and fulfill the documentation and payment requirements.

17. If the homeowner executes the TPP Contract, complies with all documentation requirements and makes all three TPP monthly payments, the second stage of the HAMP process is triggered, in which the homeowner must be offered a permanent modification. The payment amount and interest rate in the modified loan are fixed for five years and equal to the payment amount and interest rate in the TPP. Thereafter, the rate may escalate annually by up to one percent until it reaches an interest cap which is the lesser of: (i) the fully indexed and fully amortizing contract rate or (ii) the Freddie Mac Primary Mortgage market Survey rate for 30-year fixed rate mortgage loans on the date the modification is prepared. Once capped, the rate is fixed for the remainder of the term. *See* Ex. 1 at p. 9.

18. HAMP presumes that final modifications will be extended and finalized upon completion of a TPP or shortly thereafter. HAMP Supplemental Documentation dated December 22, 2009 addresses situations in which the borrower has completed the TPP but has not yet received a permanent modification.

> "In situations where an eligible borrower successfully completed the trial period and should have been converted to a permanent modification, but for reasons beyond their control were not timely

evaluated for a permanent modification, the servicer must promptly make a determination as to whether the borrower is eligible for a permanent HAMP modification. If the borrower is eligible, then the servicer must offer the borrower a permanent HAMP modification as soon as possible, but in no event later than sixty days after discovering the error." Ex. 2 at Q1222-01.

### *Plaintiff's Trial Period Plan*

19. In December of 2009, Defendant sent Plaintiff two copies of a contract entitled "Home Affordable Modification Program Trial Period Plan." Plaintiff signed this contract on January 5, 2010 and timely returned copies to Defendant. A copy of this contract is attached as Exhibit 3. This contract includes the following:

> "If I am in compliance with this Trial Period Plan (the 'Plan') and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement ('Modification Agreement'), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage."

20. Plaintiff provided Defendant with her financial documentation to support her qualification under HAMP.

21. Plaintiff also timely tendered payment of $1,173.97 over the phone to Defendant in accordance with the TPP Contract. Defendant accepted and cashed this payment.

22. Plaintiff tendered each payment of $1,173.97 on or before the date stated in the TPP Contract. Defendant accepted each of these payments. Plaintiff continued to tender payments of $1,173.97 each month through and including January of 2011; well over the three-month requirement under the TPP Contract. Defendant accepted each of these payments.

23. Plaintiff complied with the terms stated in the TPP Contract. The representations Plaintiff made in section 1 of the contract continued to be true in all material

respects. Plaintiff complied with all of Defendant's requests for information and documents.

24. Despite Plaintiff's compliance with the TPP Contract, Defendant refused to accept further payments and failed to offer Plaintiff a permanent loan modification.

## IV. FIRST CLAIM FOR RELIEF
### (Breach of Contract)

25. Plaintiff repeats, realleges and incorporates by reference all of the foregoing paragraphs.

26. Defendant entered into an individual written contract directly with Plaintiff which is attached as Exhibit 3.

27. Defendant made a valid offer to Plaintiff.

28. Plaintiff accepted Defendant's offer and met all conditions precedent in the TPP Contract so as to obligate Defendant to provide a Home Affordable Modification Agreement that would modify and supplement the mortgage on the property and the Note secured by the mortgage.

29. Plaintiff's tender of payments to Defendant constitutes consideration.

30. Plaintiff and Defendant thereby formed a valid contract.

31. To the extent that the contract was subject to a condition subsequently providing Defendant an opportunity to review the documentation Plaintiff submitted when she returned the signed TPP, this condition was waived by Defendant and/or it is estopped to assert it as a defense to Plaintiff's claims.

32. By failing to offer Plaintiff a permanent HAMP modification, Defendant breached its contract.

33. Defendant had a duty to perform and that the defendant failed to perform as agreed in the contract, without legal excuse.

34. Plaintiff remains ready, willing and able to perform under the contract by continuing to make payments.

////

35. Plaintiff has suffered harm and is threatened with additional harm from Defendant's breach, including but not limited to foreclosure.

## V. SECOND CLAIM FOR RELIEF
### (Breach of Duty of Good Faith and Fair Dealing)

36. Plaintiff repeats, realleges and incorporates by reference all of the foregoing paragraphs.

37. Defendant is obligated by contract and common law to act in good faith and to deal fairly with Plaintiff and not to do anything to destroy or injure the right of Plaintiff to receive the benefits of the contract.

38. Defendant routinely and regularly breach its duties under the contract with Plaintiff by failing to retain, employ, and supervise adequately trained staff; instituting and/or continuing with foreclosure proceedings against borrowers in a trial program; failing to provide written notices required by HAMP; and by deliberately acting to delay and otherwise frustrate loan modification processes; routinely demanding information already in its files; making inaccurate calculations and determinations of Plaintiff's eligibility for HAMP; and failing to follow through on written and implied promises.

39. Plaintiff has suffered harm and are threatened with additional harm from Defendant's breach.

## VI. THIRD CLAIM FOR RELIEF
### (Promissory Estoppel)

40. Plaintiff repeats, realleges and incorporates by reference all of the foregoing paragraphs.

41. Defendant, by way of its TPP Contract or other written offers, made a Representation and promise to Plaintiff that if she returned the TPP Contract executed and with supporting documentation, or otherwise accepted its offer, and made TPP payments, Plaintiff would receive a permanent HAMP modification.

42. Defendant's TPP Contract was intended to induce Plaintiff to rely on it and make monthly TPP payments.

43. Plaintiff did indeed rely on Defendant's representation by submitting TPP Payments creating a substantial change of Plaintiff's position.

44. Given the language in the TPP Contract, Plaintiff's reliance was either actually foreseen or reasonably foreseeable by Defendant.

45. An actual promise was made and itself induced the action or forbearance in reliance thereon.

46. Plaintiff's reliance was to her detriment. Plaintiff has yet to receive a permanent HAMP modification and has lost the opportunity to fund other strategies to deal with her default and avoid foreclosure. Enforcement is necessary in the interest of justice.

## VII. FOURTH CLAIM FOR RELIEF
### (Fraud: Intentional Misrepresentation)

47. Plaintiff repeats, realleges and incorporates by reference all of the foregoing paragraphs.

48. Defendant made a promise to modify Plaintiff's loan to Plaintiff; this was a false or misleading statement Defendant made to Plaintiff.

49. Defendant knew the statement was false or misleading when it made it.

50. Defendant intended or had reason to expect that the Plaintiff would rely on the statement.

51. Plaintiff justifiably relied on the statement.

52. Plaintiff suffered a monetary loss.

53. Defendant did not perform the promised act to modify Plaintiff's loan.

54. Plaintiff was harmed by Defendant's actions. Plaintiff's reliance on Defendant's promise was a substantial factor in causing her harm.

////

////

# VIII. FIFTH CLAIM FOR RELIEF

## (Unfair Trade Practice-AS 45.50.471. *et seq.*)

55. Plaintiff repeats, realleges and incorporates by reference all of the foregoing paragraphs.

56. Defendants violated AS 45.50.471(a) in that the conduct of Defendants as set forth herein constitutes unfair or deceptive acts or practices, including its practice of leading borrowers to believe that it will permanently modify their mortgage loans upon successful completion of a trial program and unlawful debt collection practices.

57. Defendant further violated AS 45.50.471(b)(14) by representing that an agreement confers or involves rights, remedies, or obligations which it does not confer or involve, or which are prohibited by law.

58. Defendant therefore engaged in an unfair or deceptive act or practice.

59. The act or practice occurred in the conduct of trade or commerce

60. Defendant's conduct as set forth herein resulted in loss of money and/or property to Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendants for the following:

(a)     Enter a judgment declaring the acts and practices of Defendant complained of herein to constitute a breach of contract and a breach of the covenant of good faith and fair dealing, as well as a declaration that they are required by the doctrine of promissory estoppel to offer a permanent modification to Plaintiff;

(b)     Order specific performance of Defendant's contractual obligations together with other relief required by contract and law;

(c)     Reduce the amount of indebtedness of Plaintiff by the amounts Defendants have wrongfully claimed to be owed due to payment amounts, interest and fees that do not comply with HAMP or with contracts directly with Plaintiff;

(d)     Actual damages and statutory damages of three times actual damages pursuant to AS 45.50.531(a);

(e)     Punitive damages;

(f)     Costs and reasonable attorney's fees pursuant to Alaska Rule of Civil Procedure 82 and AS 45.50.537;

(g)     Enjoin Defendant from proceeding with any foreclosure sale without fully complying with its contractual obligations under HAMP and the TPP; and,

(h)     For such other and further relief as the Court may deem just and proper.


Date: August 10, 2012

                              __ _s/ Paul H. Bratton_____
                              Paul H. Bratton, Esq.
                              Law Office of Paul H. Bratton
                              P. O. Box 463
                              Talkeetna, AK 99676
                              Phone: 907.733,2185
                              Fax: 772.679.8158
                              Email: phbratton@gci.net
                              ABN: 0711081
                              Attorney for Plaintiff  Kary Brinson


## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff demands trial by jury in this action.


Date: August 10, 2012

                              __ __s/ Paul H. Bratton_____
                              Paul H. Bratton, Esq.
                              Law Office of Paul H. Bratton
                              P. O. Box 463
                              Talkeetna, AK 99676

Phone: 907.733,2185
Fax: 772.679.8158
Email: phbratton@gci.net
ABN: 0711081
Attorney for Plaintiff  Kary Brinson

COMPLAINT AND DEMAND FOR JURY TRIAL