# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| KARY BRINSON, | |
| Plaintiff, | 3:12-CV-00169 JWS |
| vs. | ORDER AND OPINION |
| BANK OF AMERICA, N.A., and DOES 1 to 10, | [Re: Motion at docket 8] |
| Defendants. | |

## I. MOTION PRESENTED

At docket 8, defendant Bank of America ("defendant" or "BOA") moves the court for an order dismissing each of the claims asserted in plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Kary Brinson ("plaintiff" or "Brinson") opposes the motion at docket 12, and defendant replies at docket 21. Oral argument was heard on November 27, 2012.

## II. BACKGROUND

Plaintiff brought this action against BOA alleging violations of Alaska contract and tort law and Alaska's Unfair Trade Practices Act based on BOA's refusal to modify her home loan pursuant to a Home Affordable Modification Trial Period Plan ("TPP") that

-1-

BOA's loan servicer and subsidiary company BAC Home Loans Servicing, LP (collectively referred to as "BOA") sent plaintiff in December of 2009. The TPP was sent to plaintiff as part of the federal government's Home Affordable Mortgage Program (HAMP), which was a result of the Emergency Economic Stabilization Act of 2008 and implemented by the United States Department of the Treasury to help qualified homeowners avoid foreclosure by reducing monthly payments to sustainable levels.[1]

Plaintiff's TPP set up a trial loan modification whereby plaintiff would send in reduced payments of $1,173.97 for three months and provide various financial documents, and BOA would, in turn, permanently modify the loan if Brinson qualified under HAMP guidelines.[2] The introductory paragraphs of the TPP explain the process for obtaining a loan modification:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. . . . If I have not already done so, I am providing . . . documents to permit verification of all my income . . . to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Servicer, *the Servicer will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This plan will not take effect unless and until both I and the Servicer sign it and Servicer provides me with a copy of this Plan with the Servicer's signature.*[3]

The TPP contains four sections addressing: (1) the borrower's representations; (2) the terms of the trial plan; (3) the modification; and (4) additional agreements. Section 2 sets forth the revised payment amounts and provides in relevant part:

> During the period (the "Trial Period") commencing on the Trial Period Effective Date [2/1/10 in this case] and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment

---

[1] *See Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 554-55 (7th Cir. 2012).

[2] Doc. 1-3. For detailed background information regarding HAMP and how loans are modified under the program *see Wigod*, 673 F.3d at 556-57.

[3] TPP, doc. 1-3 (italics added).

-2-

is due (the "Modification Effective Date") or (ii) termination fo this Plan, I understand and acknowledge that: . . .

F. If prior to the Modification Effective Date, (i) the Servicer does not provide me a fully executed copy of the Plan and the Modification Agreement . . . the Loan Documents will not be modified and this Plan will terminate. In this event, the Servicer will have all the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

G. I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

Section 3 sets forth details about the proposed modification, providing in part:

I understand that once Servicer is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Servicer will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid later charges associated with overdue loan payments remaining unpaid as of the date immediately before the modification.

Brinson signed the TPP on January 5, 2010 and returned copies to defendant.[4] The TPP attached to the complaint does not show that BOA signed the document, and plaintiff does not allege that she ever received an executed TPP from BOA.

Brinson alleges that the TPP was an offer for a permanent loan modification that she accepted when she signed the document, and thus, if she met all the requirements listed in the TPP, BOA was obligated to provide her with a permanent modification. She alleges that she met all the requirements by providing BOA with the requested financial documents and by timely tendering the three payments of $1,173.97. Furthermore, she alleges that she continued making such payments every month through January of

---

[4] *Id.*

-3-

2011, well over the three-month requirement in the TPP, and that BOA accepted her payments. She also alleges that she qualified for a loan modification under HAMP. Because she complied with all the requirements listed in the TPP and qualified under HAMP, she alleges BOA was obligated to grant her a permanent loan modification but that it failed to do so. Her complaint raises a breach-of-contract claim, a breach of the duty of good faith and fair dealing claim, a promissory estoppel claim, an intentional misrepresentation claim, and an Unfair Trade Practices claim under AS 45.40.471(a) and (b)(14).

Defendant argues that the breach-of-contract and bad faith claims cannot survive because she cannot bring a private action to enforce BOA's obligations under HAMP, and because the TPP was not an offer and Brinson's participation did not create a contract between the parties. Similarly, defendant argues that plaintiff's promissory estoppel claim should be dismissed because it did not make a promise to Brinson, and she did not allege a substantial change in position. BOA alleges that plaintiff's fraud claim must fail because it does not allege actionable conduct and that Brinson cannot state a claim under Alaska's Unfair Trade Practices Act because she lacks standing and because its actions were lawful.

### III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[5] Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the

---

[5] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

-4-

absence of sufficient facts alleged under a cognizable legal theory."[6] "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[7]

To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."[8] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[10] "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[11] "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[12]

In deciding whether to dismiss a claim under Rule 12(b)(6), the court is generally limited to reviewing only the complaint, but it may review materials that are properly submitted as part of the complaint and may take judicial notice of undisputed matters of public record that are outside the pleadings.[13] Furthermore, documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not

---

[6] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[7] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Id.*

[10] *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[11] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[12] *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

[13] *See Gonzalez v. First Franklin Loan Services*, 2010 WL 144862, at *3 (E.D. Cal. Jan. 11, 2010) (citing *Lee*, 250 F.3d at 688-89); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

-5-

physically attached to the pleading, may be considered when ruling on a Rule 12(b)(6) motion to dismiss.[14] Thus, the court has properly considered the TPP, which was attached to plaintiff's complaint, as well as the recorded public documents related to plaintiff's loan, which were provided to the court at docket 9 and of which the court took judicial notice during oral argument.

## IV.  DISCUSSION

To begin, the court addresses BOA's argument that plaintiff's breach-of-contract and bad faith claims must fail because HAMP provides no private right of action against the participating banks. Whether HAMP creates a private right of action is not the issue presented by plaintiff's complaint. As plaintiff concedes, she is not alleging that defendant violated HAMP or any other federal statute, nor is she bringing a claim as a third-party beneficiary of any agreement between BOA and the federal government. Instead, she brought suit on the theory that the TPP constituted a contract between BOA and herself, and that BOA breached that contract. While the TPP may have been created in the context of HAMP, her claims arise exclusively under state contract and tort law.[15]

**A. Breach of contract**

Plaintiff's primary allegation against BOA is that the TPP became a contract and BOA failed to meet its obligations to her under that contract. As a federal court sitting in

---

[14] *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

[15] Defendant did not raise the argument that plaintiff's state law claims are an impermissible attempt to enforce the HAMP guidelines through state law, and thus the court need not address it here, but notes that numerous courts have addressed and rejected such an argument. *See Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 581-82 (7th Cir. 2012) ("The absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law."); *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 553 (N.D. Cal. 2012) (listing the cases that have rejected such preclusion arguments).

-6-

diversity, the court must apply Alaska substantive law.[16] Under Alaska law, the existence of a contract requires an offer including all essential terms, an unequivocal acceptance of those terms by the offeree, consideration, and an intent to be bound by the contract.[17] "The objective of contract interpretation is to determine and enforce the reasonable expectations of the parties."[18] To ascertain the parties' intent, the court looks to the language of the document and any extrinsic evidence presented to determine if the wording of the contract is ambiguous.[19] "An ambiguity exists only where the disputed terms are reasonably subject to differing interpretation after viewing the contract as a whole."[19]

Whether a TPP can be the basis for a breach of contract is not a settled issue. It appears that the majority of district courts considering the issue have concluded that TPPs are not contracts.[20] However, some courts have found it at least plausible that TPPs are enforceable contracts for permanent loan modifications, denying defendants' motions to dismiss.[21] Plaintiff primarily relies on *Turbeville v. JPMorgan Chase Bank*[22] to oppose the motion to dismiss. In *Turbeville*, the court held that at the pleading stage, the plaintiff's allegations were sufficient to establish the existence of an enforceable

---

[16]*Zamani v. Carnes*, 491 F.3d 990, 995 (9th Cir. 2007).

[17]*Davis v. Dykman*, 938 P.2d 1002, 1006 (Alaska 1997).

[18]*Norville v. Carr-Gottstein Foods Co.*, 84 P.3d 996, 1004 (Alaska 2004).

[19]*Wessells v. State Dept. of Highways*, 562 P.2d 1042, 1046 (Alaska 1977).

[19]*Id.*

[20]*See Rackley v. JPMorgan Chase Bank, N.A.*, 2011 WL 2971357, at *3 (W.D. Tex. July 21, 2011) (collecting cases).

[21]*See, e.g., Alimena v. Vericrest Fin., Inc.*, 2012 WL 6651201, at *6-*8 (E.D. Cal. Dec. 20, 2012); *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 549-52 (N.D. Cal. 2012); *Turbeville v. JPMorgan Chase Bank*, 2011 WL 7163111, at *2-*4 (C.D. Cal. April 4, 2011); *Kennedy v. Wells Fargo Bank, N.A.*, 2011 WL 4526085, at *2-*3 (C.D. Cal. Sept. 28, 2011); *Durmic v. J.P. Morgan Case Bank, N.A.*, 2010 WL 4825632, at *3-*4 (D. Mass. Nov. 24, 2010).

[22]2011 WL 7163111, at *2-*4 (C.D. Cal. April 4, 2011).

-7-

contract based on the TPP, rejecting the defendant's argument that it had unfettered discretion as to whether to grant a permanent loan modification. The court in *Turbeville,* however, did not consider the provision present in the TPP at issue in this case which provides that the lender will send a signed copy of the TPP to the borrower if the borrower is found to qualify for the offer and thus did not consider whether such a provision prevents the TPP from ripening into an offer until the lender countersigns the TPP.

As noted above, while the TPP states that the lender will provide the borrower with a Home Affordable Modification Agreement if the borrower is in compliance with the TPP, it also unequivocally states that the TPP will not take effect unless and until both the borrower and the lender sign it and the lender provides the borrower with a copy of the signed TPP. It also clearly states that the lender will send the borrower a signed copy of the TPP if the borrower qualifies for the offer or will send the borrower written notice that the borrower does not qualify for the offer.[23] More recent cases have focused on this signature provision when determining whether a TPP is an enforceable contract, including cases from two circuit courts.

In *Wigod v. Wells Fargo Bank, N.A.*, a Seventh Circuit case, the court held that the plaintiff raised a valid breach-of-contract claim based on a TPP similar to the one BOA sent plaintiff.[24] Like the case at hand, the plaintiff in *Wigod* alleged that she had complied with all of the TPP's requirements by submitting documentation, making all of

---

[23]At the time plaintiff received the TPP, banks were not required to verify eligibility prior to sending out a TPP. *See Morales v. Chase Home Fin. LLC*, 2011 WL 1670045, at * 8 (N.D. Cal. April 11, 2011). Loan servicers had the option of placing a borrower into a trial period plan based on verbal financial information obtained from the borrower, subject to later verification during the trial period. *Id.* That practice was allowed as part of a decision to roll out HAMP quickly. *Wigod,* 673 F.3d at 557. Supplemental directive SD 10-01 changed that practice, requiring that a loan servicer fully verify a borrower's eligibility prior to providing a TPP. Supplemental directive SD 10-01, *available at* www.hmpadmin.com; *Wigod*, 673 F.3d at 557. That change went into effect for any TPPs with effective dates on or after June 1, 2010. Supplemental directive SD 10-01, *available at* www.hmpadmin.com.

[24]673 F.3d 547, 561-63 (7th Cir. 2012).

-8-

the payments, and returning signed copies of the TPP to the lender. Unlike the case at hand, however, the lender in *Wigod* returned an executed copy of the TPP to the plaintiff. The court acknowledged that the lender could condition the permanent modification offer on its further approval, and in such a situation there would be no binding offer. It concluded, however, that once the lender signed the TPP agreement and returned it to the plaintiff, the lender had no more discretion as to whether to offer the plaintiff a permanent loan modification.[25] The court found that after the lender signed the TPP, the only conditions were to be satisfied by the borrower and noted that when a promise is conditioned on the performance of some act by the promisee (in this case, the borrower) there can be a valid offer that the promisor is obligated to follow through on in the event the promisee fulfills the conditions.[26] Thus, the court held that once the plaintiff satisfied the conditions listed in the TPP, the lender was obligated to provide the loan modification.[27] In *Pennington v. HSBC Bank USA, N.A.*,[28] the TPP at issue contained similar language regarding the lender's signature. The Fifth Circuit concluded that because the plaintiffs did not allege that they received a signed copy of the TPP, the TPP never ripened into an offer and thus the plaintiffs' breach-of-contract claim failed.

Other district courts have similarly distinguished *Wigod*. For example, in *Soin v. Federal National Mortgage Ass'n*,[29] the court applied the reasoning in *Wigod* and found that because there was no indication the lender returned an executed copy of the TPP, there was never an offer to modify the plaintiff's loan; instead, the court concluded that the TPP merely invited plaintiffs to apply for a loan modification. Similarly, in *Rummell*

---

[25] 673 F.3d at 561-63.

[26] *Id.* at 562.

[27] *Id.* at 563.

[28] 2012 WL 4513333, at *4 (5th Cir. Oct. 3, 2012)

[29] 2012 WL 1232324, at *5 (E.D. Cal. April 12, 2012).

-9-

*v. Vantium Captial, Inc.*,[30] the court noted that the requirement that the TPP be signed by the lender meant that, in order for a valid offer to exist, the lender needed to show further manifestation of assent, and because the lender never countersigned the TPP, there was no offer and no binding contract.[31]

Unlike the situation in *Wigod*, Brinson makes no allegation that BOA sent her a signed copy of the TPP, and the copy of the TPP attached to the complaint only has her signature on it. While the TPP uses some misleading language in stating that BOA will provide plaintiff with a loan modification if she is in compliance with the TPP, the court must look at the document as a whole, and the document unambiguously states that the TPP does not take effect unless the lender signs it and provides a copy to plaintiff, signifying that BOA did not intend to be bound by the TPP until it had determined if Brinson actually qualified for the offer and sent her a signed copy.[32] The TPP, however inartfully or clumsily, merely invites plaintiff to apply for a loan modification.[33] The requirement that the TPP be countersigned indicates that BOA planned to make a further manifestation of assent before there could be a valid offer, and "'[a] manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.'"[34] Because

---

[30]2012 WL 2564846, at *7 (E.D. Mich. July 2, 2012).

[31]*See also Brady v. Chase Home Fin., LLC*, 2012 WL 1900606, at *5-*7 (W.D. Mich. May 24, 2012) (holding that plaintiff failed to state a breach-of-contract claim because the lender never sent the plaintiff a signed copy of the TPP, and thus the TPP never ripened into an offer that the plaintiff could accept); *Pool v. Wells Fargo Bank, N.A.*, 2012 WL 3264294, at *5 (D. Colo. Aug. 10, 2012) (granting defendant's motion to dismiss based in part on the fact that the TPP was not fully executed).

[32]*See supra* note 22.

[33]*Soin*, 2010 WL 1232324, at *5.

[34]*Copper River School Dist. v. Traw*, 9 P.3d 280, 283 (Alaska 2000) (quoting Restatement (Second) of Contracts § 26 (1981)).

-10-

BOA never sent plaintiff a signed copy of the TPP, the court cannot conclude that BOA intended to be bound, and thus the TPP never ripened into an offer.

As the court in *Pennington* noted, "[a]lthough the bank's acceptance of the trial payments from [the plaintiffs] lends some support to finding that the parties intended to be bound, that weight is reduced, because [the plaintiffs] already owed regular payments."[35] While BOA deposited plaintiff's money, she owed that money under the terms of the original loan. Therefore, even if BOA refused to assent to the terms of the TPP, it could nonetheless take the money in partial satisfaction of the amount already owed. Accordingly, plaintiff fails to state a breach-of-contract claim because defendant did not intend to be bound by the TPP.

**B. Breach of covenant of good faith and fair dealing**

Plaintiff claims that BOA breached its duty to act in good faith under the TPP. All contracts in Alaska include the implied covenant of good faith and fair dealing,[36] but the TPP did not ripen into a contract, and thus there was no implied duty of good faith and fair dealing associated with the TPP. Plaintiff fails to state a claim for a breach of the duty of good faith and fair dealing.

**C. Promissory estoppel**

Promissory estoppel is intended to enable courts to enforce contract-like promises made unenforceable by technical defects.[37] In Alaska, a promissory estoppel claim has four requirements: "(1) The action induced amounts to a substantial change of position; (2) it was either actually foreseen or reasonably foreseeable by the promisor; (3) an actual promise was made and itself induced the action or forbearance in reliance

---

[35] *Pennington*, 2012 WL 4513333, at *4.

[36] *Anchorage Chrysler Ctr., Inc. v. DaimlerChrysler Motors Corp.*, 221 P.3d 977, 992 (Alaska 2009) (citing *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997)).

[37] *Brady v. Alaska*, 965 P.2d 1, 10 (Alaska 1997).

-11-

thereon; and (4) enforcement is necessary in the interest of justice."[38]  As the Alaska Supreme Court noted, "[w]hen a promissory estoppel claim is made in conjunction with a breach of contract claim, the 'actual promise' element of promissory estoppel is analytically identical to the acceptance required for a contract."[39]  If it were otherwise, "promissory estoppel . . . would become a device by which parties could be held to contracts they did not accept."[40] The court has already determined that the TPP was not an offer in this case because of the provision requiring BOA's signature before the TPP could take effect.  Therefore, BOA did not make any promise, and plaintiff's promissory estoppel claim must fail.

**D. Fraud**

Plaintiff alleges that BOA made a promise in the TPP to permanently modify her loan, that the promise was false or at least misleading, and that BOA knew that it was false.  In Alaska, "[c]ommon law fraud claims require a showing of (1) a false representation of fact; (2) knowledge of the falsity of the representation; (3) intention to induce reliance; (4) justifiable reliance; and (5) damages."[41]  Plaintiff's fraud claim is only based on the terms of the TPP, not on any alleged statement made by an agent of defendant.  Because the court found that BOA had to sign the document for it to take effect, plaintiff's allegations of fraud are contradicted by the terms of the TPP.  It was not reasonable or justifiable for plaintiff to believe that she was guaranteed a permanent loan modification.  Thus, plaintiff's fraud claim must also fail.

---

[38] *Valdez Fisheries Dev. Ass'n, Inc. v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 668 (Alaska 2002) (quoting *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274,1284 (Alaska 1985)).

[39] *Id.* (citing *Brady*, 965 P.2d at 11) (internal quotations omitted).

[40] *Id.*

[41] *Shehata v. Salvation Army*, 225 P.3d 1106, 1114 (Alaska 2010).

-12-

**F. Alaska's Unfair Trade Practice Act**

Plaintiff's last claim against defendant is based on Alaska's Unfair Trade Practices Act, AS 45.50 471 ("UTPA"). Specifically, plaintiff alleges that defendant violated AS 45.50.471(a), which states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful." Plaintiff alleges that defendant's practice of leading borrowers to believe that it will permanently modify their mortgage loans constitutes an unfair or deceptive act. Plaintiff also alleges that defendant violated AS 45.50.471(b)(14), which states that an unfair or deceptive act or practice includes "representing that an agreement confers or involves rights, remedies, or obligations which it does not confer or involve . . . ." Plaintiff asserts that BOA, through the TPP, represented that the agreement conferred rights, remedies, and obligations that it did not.

The parties dispute whether plaintiff's UTPA claim is valid. Defendant cites to *Barber v. National Bank of Alaska*,[42] where the Supreme Court held that UTPA did not apply to mortgages. Plaintiff points out, however, that the statute was subsequently amended to specifically include mortgages by the addition of AS 45.50.471(b)(52). That section makes it a violation of UTPA to engage in certain mortgage acts, specifically any act or practice prohibited in the Mortgage Lending Regulation Act, AS 06.60.340. Defendant responds that plaintiff's claim does not allege a violation of AS 45.50.471(b)(52), the Mortgage Lending Act, and thus UTPA does not apply to the situation at hand. Regardless of whether UTPA applies to all mortgage actions given the addition of AS 45.50.471(b)(52), plaintiff's claim nonetheless fails. The crux of plaintiff's case is that BOA offered her a loan modification, which she accepted. However, the court has concluded that there was no offer in the first place, and any purported acceptance was ineffective. BOA therefore did not engage in any deceptive practices or represent that the TPP conferred rights that it did not.

---

[42] 815 P.2d 857, 861 (Alaska 1991).

-13-

## V. CONCLUSION

Based on the foregoing analysis, defendant's motion to dismiss at docket 8 is HEREBY GRANTED. The Clerk of Court is directed to enter judgment for defendant and to close the case.

DATED this 13th day of January 2013.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

-14-

Case 3:12-cv-00169-JWS   Document 23   Filed 01/13/13   Page 14 of 14